### UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

---

PRESTIGE INSTITUTE FOR PLASTIC
SURGERY, PC,
     *Plaintiff*,

    v.

AETNA, INC. AND GEORGE ALLEN
WASTEWATER MANAGEMENT,
     *Defendants.*

No. 3:23-cv-940 (VAB)

---

### RULING AND ORDER ON MOTION TO DISMISS

Prestige Institute For Plastic Surgery, PC ("Prestige" or "Plaintiff") has sued Aetna Inc.[1]

("Aetna") and George Allen Wastewater Management ("George Allen") (collectively,

"Defendants") and alleges breach of contract ("Count One"), promissory estoppel ("Count

Two"), and account stated ("Count Three"), as well as four other claims pled in the alternative,

should ERISA govern its claims: failure to make all payments under Member's plan in violation

of 29 U.S.C. § 1132(a)(1)(B)) ("Count Four"), breach of fiduciary duty and co-fiduciary duty in

violation of 29 U.S.C. § 1132(a)(3), 29 U.S.C. § 1104(a)(1) and 29 U.S.C. § 1105(a) ("Count

Five"), failure to establish/maintain reasonable claims procedures in violation of 29 C.F.R. §

2560.503-1 ("Count Six"), and failure to establish a summary plan description in violation of 29

U.S.C. § 1022 ("Count Seven"). Complaint, ECF No. 1 (July 15, 2023) ("Compl.").

Defendants have filed a motion to dismiss Prestige's Complaint in its entirety. Mot. to

Dismiss, ECF No. 27 (Oct. 23, 2023) ("Mot.").

---

[1] Defendants state that Aetna was improperly identified as "Aetna, Inc." and operate business under the name Aetna Inc. Mot. to Dismiss, ECF No. 27 (Oct. 23, 2023) at 2.

In its response, Plaintiff agreed to "withdraw its state law claims for breach of implied contract and account stated." Mem. of L. in Supp. Of Opp'n to Mot. to Dismiss, ECF No. 30 (Dec. 12, 2024) at 14 ("Opp'n").

For the foregoing reasons, Defendants' motion to dismiss is **GRANTED**.

Prestige's claims are **DISMISSED with prejudice**.

To the extent that the patient identified in this Ruling and Order seeks to bring her ERISA claims directly as Plaintiff in substitution for Prestige, she may move for leave to amend the Complaint by **October 25, 2024**.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

### A.  Factual Allegations

Aetna[2] allegedly provided insurance benefits for a patient, identified only by their Aetna Identification Number w247461937 ("Patient"). Compl. ¶ 5.

George Allen allegedly sponsored Patient's health benefits. *Id.* at ¶ 6.

Prestige "was a non-participating or out-of-network provider" under Patient's plan with Aetna (the "Plan"). *Id.* at ¶ 13.

On July 16, 2019, Plaintiff's employee and/or contractor, Dr. Joseph F. Tamburrino, allegedly performed medically necessary surgery as part of Patient's treatment for breast cancer at Doylestown Hospital. *Id.* at ¶ 14–16.

Prestige allegedly requested and received authorization for the surgery from Aetna before performing the surgery. *Id.* at ¶ 17–18.

---

[2] Aetna alleges that the plan was administered by its subsidiary, Aetna Life Insurance Company. Mem of L. in Supp. Of Mot. to Dismiss, ECF No. 27-1 (Oct. 23, 2023) at 1.

Prestige then submitted a bill to Aetna for a total of $100,000. *Id.* at ¶ 23. Prestige alleges that this amount "represent[s] the usual and customary charges for the complex procedures performed by a Board-Certified Plastic Surgeon practicing in Pennsylvania." *Id.* at ¶ 24.

Aetna allegedly paid $1,775.37 toward these charges, leaving an outstanding balance of $98,224.63. *Id.* at ¶ 25.

Patient later required second-stage reconstruction surgery. *Id.* at ¶ 26.

On January 15, 2020, Aetna allegedly pre-authorized this second-stage reconstruction surgery. *Id.* at ¶ 28.

On January 29, 2020, Prestige performed Patient's second-stage reconstruction surgery. *Id.* at ¶ 29.

Also, on January 29, 2020, Prestige submitted a bill to Aetna for a total of $22,179.82. *Id.* at ¶ 30. Prestige alleges that this amount likewise "represent[s] the usual and customary charges for the complex procedures performed by a Board-Certified Plastic Surgeon practicing in Pennsylvania." *Id.* at ¶ 33.

Aetna allegedly declined to pay the charges, and the full amount of the bill, $22,179.82 was left outstanding. *Id.* at ¶ 31.

Prestige claims to be "proceeding on their own individual claims and as assignee concerning medical services provided to the Patient." *Id.* at ¶ 7.


### B.  Procedural History

On July 15, 2023, Prestige filed its Complaint. Compl.

On October 23, 2023, Defendants filed their motion to dismiss the Complaint. Mot.; Mem of L. in Supp. Of Mot. to Dismiss, ECF No. 27-1 (Oct. 23, 2023) ("Mem.")

On December 12, 2023, Prestige filed a memorandum of law in opposition to Defendants' motion to dismiss. Opp'n.

On January 19, 2024, Defendants filed a reply in support of their motion to dismiss. Reply in Supp. of Mot. to Dismiss, ECF No. 33 (Jan. 19, 2024) ("Reply").

## II.   STANDARD OF REVIEW

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Any claim that fails "to state a claim upon which relief can be granted" will be dismissed. Fed. R. Civ. P. 12(b)(6). In reviewing a complaint under Rule 12(b)(6), a court applies a "plausibility standard" guided by "[t]wo working principles." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

First, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." (alteration in original) (citations omitted)). Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679. Thus, the complaint must contain "factual amplification . . . to render a claim plausible." *Arista Records LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (quoting *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009)).

When reviewing a complaint under Federal Rule of Civil Procedure 12(b)(6), the court takes all factual allegations in the complaint as true. *Iqbal*, 556 U.S. at 678. The court also views

the allegations in the light most favorable to the plaintiff and draws all inferences in the plaintiff's favor. *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 359 (2d Cir. 2013); *see also York v. Ass'n of the Bar of N.Y.C.*, 286 F.3d 122, 125 (2d Cir. 2002) ("On a motion to dismiss for failure to state a claim, we construe the complaint in the light most favorable to the plaintiff, accepting the complaint's allegations as true.").

A court considering a motion to dismiss under Rule 12(b)(6) generally limits its review "to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). A court may also consider "matters of which judicial notice may be taken" and "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993); *Patrowicz v. Transamerica HomeFirst, Inc.*, 359 F. Supp. 2d 140, 144 (D. Conn. 2005).

## III.   DISCUSSION

Defendants argue that (1) Aetna is not a proper Defendant, (2) Prestige's state law claims are preempted by ERISA, (3) even if its state law claims were not preempted, Prestige fails to plead a plausible claim for each state law claim, and (4) Prestige lacks standing to enforce its ERISA-based claims.[3]

---

[3] "A federal trial court sitting in diversity jurisdiction must apply the law of the forum state to determine the choice-of-law." *Fieger v. Pitney Bowes Credit Corp.*, 251 F.3d 386, 393 (2d Cir. 2001). Under Connecticut law, "the validity and construction of a contract generally are determined by the law of the state of execution or by the law of the state in which the contract is to be performed." *Brandewiede v. Emery Worldwide*, 815 F. Supp. 60, 63 (D. Conn. 1992) Thus, Pennsylvania law applies to Plaintiff's state law claims, because Prestige, Patient, and George Allen are domiciled in Pennsylvania, and Prestige performed surgical services for Patient in Pennsylvania.

The Court will address each argument in turn.[4]

### A.  The Issue of Whether Aetna (or George Allen) is a Proper Defendant

#### 1.  Claims Against George Allen

As a preliminary matter, while not addressed in the parties' briefings, the Court considers whether the Plaintiff has properly asserted claims against George Allen. Although Plaintiff claims George Allen "sponsored the Patient's health benefits,"[5] Compl. ¶ 6, the Complaint is devoid of allegations that George Allen "agree[d] to or induce[d] [Prestige] to perform surgery for the Patient." *Taylor Theunissen, M.D., LLC v. United HealthCare Grp., Inc.*, 365 F. Supp. 3d 242, 246 (D. Conn. 2019); *see also Aesthetic & Reconstructive Breast Ctr., LLC v. United HealthCare Grp., Inc.*, 367 F. Supp. 3d 1, 4 (D. Conn. 2019) ("The amended complaint alleges that Jacobs was the patient's employer but does not allege any actions taken by Jacobs to agree to or induce the Center to perform surgery for the patient. In the absence of any allegations that it was Jacobs who had dealings with the Center or did anything other than employ the patient, I will grant Jacobs' motion to dismiss as to all of the Center's claims against it."). Rather, Prestige alleges that it communicated exclusively with Aetna.

Because Plaintiff has not alleged that George Allen acted as an agent of Aetna, Plaintiff's remaining state law claim, Count Two, against George Allen must be dismissed. *See Aesthetic*, 367 F. Supp. 3d at 4 n.3 ("The Center has not properly alleged facts to show that Jacobs was UHG's agent.") *Trib.-Rev. Pub. Co. v. Westmoreland Cnty. Hous. Auth.*, 833 A.2d 112, 119–20

---

[4] At the outset, the Court notes that this case is analogous, though not identical, to *Aesthetic & Reconstructive Breast Ctr., LLC v. United HealthCare Grp., Inc.*, 367 F. Supp. 3d 1 (D. Conn. 2019) and *Taylor Theunissen, M.D., LLC v. United HealthCare Grp., Inc.*, 365 F. Supp. 3d 242 (D. Conn. 2019).

[5] The Complaint does not allege that George Allen was Patient's employer, however, Patient's Plan states that George Allen was Patient's employer. Decl. of Julianne E. Lund Ex. 1, ECF No. 27-6 ("Lund Decl. Ex. 1") at 8.

(Pa. 2003) (Under Pennsylvania law, an agency relationship "exists with the (1) manifestation by the principal that the agent shall act for him; (2) the acceptance of the undertaking by the agent; and (3) the control of the endeavor in the hands of the principal.")

George Allen may, however, be subject to suit under ERISA as the sponsor of Patient's Medical Plan. *Theunissen*, 365 F. Supp. 3d at 246 ("because Cheniere is designated by the plan as at least a co-administrator, Cheniere is properly subject to suit under ERISA."); *cf. Crocco v. Xerox Corp.*, 137 F.3d 105, 107–08 (2d Cir. 1998) ("Because it is clear from the Plan documents that Xerox was neither the designated Plan administrator nor a Plan trustee, and because it could not, . . . , be a *de facto* co-administrator for purposes of § 502(a)(1), it cannot be held liable for benefits due to Crocco under the plan.").

Accordingly, assuming without deciding that George Allen may be considered co-administrator of the Plan for the purposes of Section 502, the Court will consider whether Prestige may bring ERISA claims against George Allen.

### 2. Claims Against Aetna

Defendants argue that "Aetna Inc. must be dismissed from this action as a matter of law" because "[Aetna Life Insurance Company], not Aetna Inc., was the Plan's claims administrator and issued the pre-authorization letters," and "Aetna Inc. is a holding company that neither issues insurance policies nor administers plans; therefore, it is an improper defendant to Plaintiff's ERISA-based claims." Mem. at 6.

Plaintiff does not address this argument in its Opposition.

The Court agrees with Defendants.

While Aetna's "corporate identity and affiliations . . . are questions of fact" that the Court must accept as true in deciding a motion to dismiss, *see Aesthetic*, 367 F. Supp. 3d at 5, "[b]ecause the plan is referenced in the complaint, it is proper for the Court to consider the plan document" Aetna submitted. *Theunissen*, 365 F. Supp. 3d at 246 (citing *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) ("in some cases, a document not expressly incorporated by reference in the complaint is nevertheless 'integral' to the complaint and, accordingly, a fair object of consideration on a motion to dismiss")). Likewise, because Prestige refers to the July 2, 2019 (authorization number 7501486), and January 15, 2020, (authorization number 3722810110000000) pre-authorization letters in the Complaint, *see* Compl. ¶¶ 18, 21, 27–28, the Court may also consider the letters that Aetna submitted. *See also Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 196 (2d Cir. 2005) ("Where a plaintiff has 'reli[ed] on the terms and effect of a document in drafting the complaint,' and that document is thus 'integral to the complaint,' we may consider its contents even if it is not formally incorporated by reference." (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir.2002)) (alteration in original)).

ALIC is clearly the administrator of Patient's Plan. *See* Lund Decl. Ex. 1 at 8 ("Third Party Administrative Services provided by Aetna Life Insurance Company"); *id.* at 10 ("administrative Services Contract with: Aetna Life Insurance Company"). In addition, while the pre-authorization letters are simply signed as "Aetna," they likewise reference ALIC. Decl. of Julianne E. Lund Ex. 2, Letter, dated Jul. 2, 2019, ECF No. 27-7 at 6, 13, 17, 21 ("Lund Decl. Ex. 2") ("Aetna is the brand name used for products and services provided by one or more of the Aetna group of subsidiary companies, including Aetna Life Insurance Company and its affiliates."); Decl. of Julianne E. Lund Ex. 3, Letter, dated Jan. 15, 2020, ECF No. 27-8 at 6, 13, 17, 21 ("Lund Decl. Ex. 3") (same). Because Aetna is "merely the parent company of [ALIC]," it

"is not properly subject to suit for the non-payment of any benefits under the patient's plan" *Theunissen*, 365 F. Supp. 3d at 246; *see also SFA Folio Collections, Inc. v. Bannon*, 585 A.2d 666 (Conn. 1991), *cert. denied*, 501 U.S. 1223, (1991) ("[I]t is a fundamental principle of corporate law that the parent corporation and its subsidiary are treated as separate and distinct legal persons even though the parent owns all the shares in the subsidiary and the two enterprises have identical directors and officers.").

Accordingly, any claims against Aetna must be dismissed.

The Court will consider, however, whether Prestige may bring any valid claims against ALIC.

### B.  The ERISA Claims

As discussed above, George Allen and ALIC may be subject to suit under ERISA. Prestige pleads four counts in the alternative under ERISA. Counts Four and Five allege violations under Section 502 of the Act, and Counts Six and Seven allege violations of 29 C.F.R. § 2560.503-1 and 29 U.S.C. § 1022, respectively.

In *Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134 (1985), the Supreme Court found that "the statutory provision explicitly authorizing a beneficiary to bring an action to enforce his rights under the plan—§ 502(a)(1)(B)" did not provide an express or implied right to "extracontractual damages to a beneficiary" for a violation of 29 C.F.R. § 2560.503-1. *Id.* at 144–45. Thus, any cause of action that may arise due to a violation of 29 C.F.R. § 2560.503-1 requires standing to bring suit under Section 502. *See* 29 U.S.C. § 1132(a)(1)(B) ("a civil action may be brought. . . by a participant or beneficiary . . . to enforce his rights under the terms of the plan")

Moreover, 29 U.S.C. § 1022 sets forth the requirements for providing employees with summary plan descriptions. "If an employer does not provide a summary plan description, or the summary is inadequate to inform an employee of his rights under the plan, ERISA empowers plan participants and beneficiaries to bring civil actions against plan fiduciaries for any damages that result from the failure to disclose," under Section 502. *Howard v. Gleason Corp.*, 901 F.2d 1154, 1159 (2d Cir. 1990). Thus, there must be standing to sue under Section 502 of ERISA to assert claims for any alleged violation of 29 U.S.C. § 1022.

Under Section 502 of ERISA, "a civil action may be brought. . . by a participant or beneficiary . . . to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan[.]" 29 U.S.C. § 1132(a)(1)(B). A "participant" is "any employee . . . who is or may become eligible to receive a benefit of any type from an employee benefit plan" and a "beneficiary" is "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." 29 U.S.C. § 1002(7)–( 8).

Healthcare providers are not considered beneficiaries under Section 502. *Rojas v. Cigna Health & Life Ins. Co.*, 793 F.3d 253, 257 (2d Cir. 2015) ("'Beneficiary,' as it is used in ERISA, does not without more encompass healthcare providers."). In this Circuit, however, "physicians [may] bring claims under § 502(a) based on a valid assignment from a patient." *Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352, 361 (2d Cir. 2016). The Second Circuit has recognized a "narrow exception [that] grants standing only to healthcare providers to whom a beneficiary has assigned his claim in exchange for health care benefits." *Id.* (citing *Simon v. Gen. Elec. Co.*, 263 F.3d 176, 178 (2d Cir. 2001). "[S]imply asserting that claims under [Section 502] have been assigned by the patients to [a healthcare provider] is insufficient by itself to give [the

provider] a cause of action under the statute[,] [r]ather to obtain standing, the patients'
assignment of the right to sue for benefits must be exchanged for healthcare benefits." *Id.* at 361–
62.

 "To proceed in the shoes of a beneficiary, the assignee must show that there is a valid
assignment that comports with the terms of the benefits plan." *Pro. Orthopaedic Assocs., PA v.
1199SEIU Nat'l Benefit Fund*, 697 F. App'x 39, 40 (2d Cir. 2017). "[T]he validity of assignments
for ERISA purposes is a question of federal common law[.]" *Merrick v. UnitedHealth Grp. Inc.*,
175 F. Supp. 3d 110, 117 (S.D.N.Y. 2016) (internal quotation omitted); *see also Devlin v.
Empire Blue Cross and Blue Shield*, 274 F.3d 76, 85 n. 5 (2d Cir.2001) ("[I]n ERISA cases, state
law does not control. Instead, general common law principles apply.").

 Defendants argue that Count Six should be dismissed because 29 C.F.R. § 2560.503-1
does not confer a private cause of action. Opp'n. at 22–23. Plaintiff does not address this
argument. Defendants also argue that "the Plan contains a valid and enforceable anti-assignment
provision" and thus "any purported assignment from [Patient] to Plaintiff is ineffective to convey
standing to Plaintiff to pursue its ERISA-based claims." Mot. at 28–29.

 Plaintiff does not dispute that under the anti-assignment clause contained in the Plan, it
may not be assigned Plaintiff's claims. Opp'n. at 16. Plaintiff argues, however, that it is bringing
suit as Patient's Designated Authorized Representative. *Id.*

 In their reply, Defendants argue that a power of attorney is insufficient to provide
Plaintiff standing to bring suit on Patient's behalf. Reply at 8–9.

 The Court agrees.

 Following the reasoning of other courts in this Circuit, at least one court in this District
has found that "where a plan unambiguously prohibits assignment, an attempted assignment will

be ineffectual ... [and] ... a healthcare provider who has attempted to obtain an assignment in contravention of a plan's terms is not entitled to recover under ERISA." *Theunissen*, 365 F. Supp. 3d at 248 (quoting *Shuriz Hishmeh M.D. Empire Healthchoice HMO, Inc.*, 2017 WL 663543, at *4 (E.D.N.Y. 2017) (alteration in original). The Second Circuit, along with several Circuit courts, has likewise held that a medical provider may not claim standing under Section 502 where they were assigned rights in contravention of a valid anti-assignment provision. *McCulloch Orthopaedic Surgical Servs., PLLC v. Aetna Inc.*, 857 F.3d 141, 147 (2d Cir. 2017) ("Based on the plain language of [the anti-assignment] provision, McCulloch's acceptance of an assignment was ineffective—a legal nullity.") (citing *Physicians Multispecialty Grp. v. Health Care Plan of Horton Homes, Inc.*, 371 F.3d 1291, 1295 (11th Cir. 2004) ("[W]e are persuaded by the reasoning of the majority of federal courts that have concluded that an assignment is ineffectual if the [ERISA benefit] plan contains an unambiguous anti-assignment provision.") (collecting cases)).

As a result, where a plan contains an anti-assignment provision that has not been waived, courts have dismissed ERISA suits from healthcare providers claiming to have assignments from patients. *See Theunissen*, 365 F. Supp. 3d at 248 ("[T]he anti-assignment clause of the patient's ERISA plan bars Theunissen from pursuing any of the ERISA causes of actions alleged in the amended complaint."); *Hishmeh*, 2017 WL 663543, at *4 ("[T]he Court finds that the health plans at issue in this case expressly bar the assignment of benefits upon which Dr. Hishmeh relies to establish his statutory standing, which is an essential element of a viable claim under ERISA."); *see also Merrick*, 175 F. Supp. 3d at 118–19 (collecting cases).

In the Third Circuit, "district courts have recognized that a valid power of attorney can, under the appropriate circumstances, trump an unambiguous anti-assignment clause in an ERISA

plan." *Emami v. Aetna Life Ins. Co.*, No. 22-CV-6115 (KSH) (LDW), 2023 WL 5370999, at *3

(D.N.J. Aug. 22, 2023) (collecting cases). These courts relied on two Third Circuit rulings, *Am.*

*Orthopedic & Sports Med. v. Indep. Blue Cross Blue Shield*, 890 F.3d 445 (3d Cir. 2018), and

*Plastic Surgery Ctr., P.A. v. Aetna Life Ins. Co.*, 967 F.3d 218 (3d Cir. 2020), where the Third

Circuit held "that anti-assignment provisions, like other unambiguous terms in a contract, are

enforceable," however, in dicta, "left open the possibility that a patient could grant her provider a

valid power of attorney to pursue claims for benefits on her behalf." *Plastic Surgery Ctr., P.A.*,

967 F.3d at 228.

District courts in this Circuit, however, have recognized a rule "precluding ERISA

actions brought by physicians as attorneys in fact when the device of a power of attorney is, as

here, utilized to plainly circumvent an unambiguous anti-assignment provision in a health plan."

*Sundown by Farkas v. Aetna Life Ins. Co.*, No. 23-CV-1905 (JMA) (ST), 2024 WL 1051165, at

*14 (E.D.N.Y. Jan. 16, 2024). As the Eastern District of New York has observed,

> To hold otherwise would effectively nullify the Second Circuit's binding precedent that
> unambiguous anti-assignment provisions in health plans are valid and enforceable,
> because such provisions could easily be circumvented with a power of attorney.
> Moreover, it would allow a power of attorney to be utilized to authorize actions by
> persons whom Congress has declined to authorize as plaintiffs. . . . [T]o authorize the
> action would . . . allow for the nullification of unambiguous, enforceable anti-assignment
> clauses through mere clever drafting.

*Id.*; *see also Karkare on behalf of JP v. Aetna Life Ins. Co.*, No. 21-CV-07152 (MKB) (LGD),

2022 WL 17787619, at *3 (E.D.N.Y. Nov. 7, 2022), *report and recommendation adopted*, No.

21-CV-7152 (MKB) (LGD), 2023 WL 2731732 (E.D.N.Y. Mar. 31, 2023) ("In this Circuit, a

power of attorney is insufficient for a provider to bring suit on behalf of a patient under

ERISA"); *Med. Soc'y of New York v. UnitedHealth Grp. Inc.*, No. 16-CV-5265 (JPO), 2017 WL

4023350, at *7 (S.D.N.Y. Sept. 11, 2017) ("Plaintiffs argue in the alternative that Podiatric may

pursue this claim as the 'authorized representative' or 'attorney-in-fact' for Patients A and B. But

this argument is unavailing. ERISA 'unambiguously provides that a civil action ... may be brought by a participant, beneficiary, or fiduciary," (quoting *Am. Psychiatric Ass'n*, 821 F.3d at 360) (internal citation marks omitted)); *Karkare on behalf of JP v. Aetna Life Ins. Co.*, No. 21-CV-7152 (MKB) (LGD), 2023 WL 2731732, at *4 (E.D.N.Y. Mar. 31, 2023) ("Since a power of attorney 'is not the equivalent of an assignment of ownership,' and Plaintiff is not a 'participant' or a 'beneficiary' pursuant to section 502(a)(1)(B), he is not entitled to raise this ERISA claim on behalf of [patient]." (quoting *Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, 106 F.3d 11, 17–18, (2d Cir. 1997))).

In so doing, these courts have noted that, while the Second Circuit has found that a valid power of attorney granted Article III standing for plaintiff to bring a breach of contract suit on behalf of the grantors despite an anti-assignment clause, *see Sorotzkin v. EmblemHealth Inc.*, No. 22-3194, 2023 WL 7383169, at *1–2 (2d Cir. Nov. 8, 2023), the existence of Article III standing does not confer standing sufficient to bring suit under ERISA. *Sundown*, 2024 WL 1051165, at *13 ("Unlike Article III standing, courts must consider the text of the statute and the legislative intent in determining whether a plaintiff is statutorily authorized to sue.").

The Court finds this reasoning to be persuasive, and will not expand the "narrow exception" conferring standing on healthcare providers with valid assignments to permit a healthcare provider to proceed as attorney in fact where the ERISA plan contains a valid anti-assignment provision. *See Am. Psychiatric Ass'n*, 821 F.3d at 361 ("[W]e have allowed physicians to bring claims under § 502(a) based on a valid assignment from a patient. . . . However, '[t]his narrow exception grants standing only to healthcare providers to whom a beneficiary has assigned his claim in exchange for health care benefits.'" (quoting *Simon v. Gen. Elec. Co.*, 263 F.3d 176, 178 (2d Cir.2001)) (alteration in original)). Just as other district courts

14

have declined to distinguish between claims brought under an assignment of benefits and those purportedly brought as authorized representative, *RAI Care Centers of Michigan I, LLC v. Admin. Sys. Rsch. Corp. Int'l*, No. 1:17-CV-1142, 2020 WL 12772267, at *3 (W.D. Mich. Mar. 17, 2020) ("RAI has failed to demonstrate how its position as the patients' purported authorized representative is different from its position as the patients' assignee"), Prestige cannot circumvent the anti-assignment clause in the Plan and assert claims as Patient's Designated Authorized Representative.

While Plaintiff contends that "[i]n determining the applicable law, it is crucial that this Court consider the fact that the medical procedures took place in Pennsylvania," Opp'n. at 17, "[a]n ERISA-regulated plan is . . . to be construed in accordance with federal common law." *Critchlow v. First UNUM Life Ins. Co. of Am.*, 378 F.3d 246, 255 (2d Cir. 2004). And, given the persuasive reasoning of applying the rule used in this Circuit, and the absence of any persuasive authority in this Circuit to the contrary, this Court will follow the lead of these other courts.[6]

Regardless, even following the law of the Third Circuit, Prestige would lack standing to enforce the ERISA claims here because it fails to plead the existence of a power of attorney, let alone one valid under applicable law,[7] in its Complaint. Rather, Prestige alleges that it is proceeding as "assignee concerning medical services provided to the Patient," Compl. ¶ 7, and "has standing to seek such relief based on the assignment of benefits obtained by Plaintiff from Patient." *Id.* at ¶ 56. Prestige thus has only alleged that it has received an "assignment" of

---

[6] Significantly, as of the date of this opinion, federal district courts in Pennsylvania have not reached the question of whether a power of attorney gives a healthcare provider standing to bring an ERISA suit despite a valid anti-assignment provision.

[7] While New Jersey law does not apply in this case, district courts applying the Third Circuit's rule "have consistently held that medical practices are not permitted to act as attorneys-in-fact because they are neither 'individuals' nor 'qualified banks,'" as required under New Jersey power of attorney law. *Kayal v. Cigna Health & Life Ins. Co.*, No. CV 23-03808, 2024 WL 2954283, at *3 (D.N.J. June 12, 2024) (applying New Jersey law). Thus, no district court in the Third Circuit has found that entities such as Prestige may bring suit under power of attorney despite a valid anti-assignment clause.

Patient's benefits, not that it is suing on Patient's behalf.[8] *Am. Orthopedic & Sports Med.*, 890 F.3d at 454 ("Assignments and powers of attorney differ in important respects with distinct consequences for the power of a plan trustee to contractually bind an insured."). The Third Circuit has held that "anti-assignment clauses in ERISA-governed health insurance plans as a general matter are enforceable." *Id.*

Prestige also alleges to be "proceeding on their own individual claims" in addition to "assignee concerning medical services provided to the Patient." Compl. at ¶ 7. Even where plaintiffs have pled the existence of a valid power of attorney, district courts in the Third Circuit have dismissed ERISA claims brought by medical providers where, as here, "the claims were brought by the out-of-network medical providers in their own name, who did not indicate that they were bringing claims on behalf of any patients." *Somerset Orthopedic Assocs., P.A. v. Horizon Healthcare Servs., Inc.*, No. CV 19-8783, 2021 WL 3661326, at *5 (D.N.J. Aug. 18, 2021) (discussing *O'Brien v. Aetna, Inc.*, No. CV-20-05479 (RBK) (KMW), 2021 WL 689113, at *3 (D.N.J. Feb. 23, 2021)); *Abramson v. Aetna Life Ins. Co.*, No. 2:22-CV-05092 (BRM) (CLW), 2023 WL 3199198, at *7 (D.N.J. May 2, 2023) ("[T]he Third Circuit has refrained from recognizing an assignment of benefits masking as a power of attorney.").

Accordingly, Plaintiff lacks standing to bring its claims under ERISA, and thus Counts Four to Seven will be dismissed.

---

[8] Though Prestige has submitted the Designated Authorized Representative form the Patient signed, the Court may not properly consider this document because it has not been referenced in, let alone shown to be integral to, the allegations in the Complaint. *See Goel*, 820 F.3d at 559 ("A document is integral to the complaint where the complaint relies heavily upon its terms and effect. Merely mentioning a document in the complaint will not satisfy this standard[.]") (internal citation and quotation marks omitted).

### C.  The Promissory Estoppel Claim

As discussed above, Plaintiff does not dispute that ERISA governs Patient's plan, and has withdrawn its state law claims for breach of implied contract and account stated. Opp'n. at 14. Thus, Plaintiff has one remaining state law claim for promissory estoppel.[9] In addition, Plaintiff has failed to allege valid state law claims against George Allen, and may only assert state law claims against ALIC, not Aetna.

For the sake of judicial economy, however, the Court will consider whether Prestige could properly assert its promissory estoppel claim against ALIC.

Defendants argue that Plaintiff's state law claim is preempted by ERISA. Mem. at 11–18. Defendants further argue that Plaintiff's promissory estoppel claim fails because "[n]o promise of payment was ever even made to Plaintiff." Mem. at 27.

Prestige claims that this Court's decision in *Aesthetic & Reconstructive Breast Ctr., LLC v. United HealthCare Grp., Inc.*, 367 F. Supp. 3d 1, 4 (D. Conn. 2019) and the Third Circuit's opinion in *Plastic Surgery Ctr., P.A. v. Aetna Life Ins. Co.*, 967 F.3d 218 (3d Cir. 2020) support finding that its promissory estoppel claim is not preempted.

The Court disagrees.

Section 514 of ERISA preempts "state common law claims, . . . that seek 'to rectify a wrongful denial of benefits promised under ERISA-regulated plans, and do not attempt to remedy any violation of a legal duty independent of ERISA.'" *Paneccasio v. Unisource Worldwide, Inc.*, 532 F.3d 101, 114 (2d Cir. 2008) (citing *Aetna Health Inc. v. Davila*, 542 U.S.

---

[9] Although the Court has dismissed Plaintiff's federal claims under ERISA, the Complaint adequately alleges that this Court has diversity jurisdiction, because the parties are of diverse citizenship and the alleged amount in controversy exceeds $75,000. *See* 28 U.S. Code § 1332 ("The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States").

200, 209 (2004)). "How express preemption interacts with common law claims brought by third-party medical providers who do not have valid assignments of their patient's benefits remains open within the Second Circuit." *Murphy Med. Assocs., LLC v. Yale Univ.*, No. 3:22-CV-33 (KAD), 2023 WL 2631798, at *8 (D. Conn. Mar. 24, 2023) (citing *Aesthetic*, 367 F. Supp. 3d at 8). "[C]ourts are reluctant to find state laws preempted unless they implicate the relationships among 'the core ERISA entities: beneficiaries, participants, administrators, employers, trustees and other fiduciaries.'" *Varela v. Barnum Fin. Grp.*, 644 F. App'x 30, 31 (2d Cir. 2016) (quoting *Gerosa v. Savasta & Co.*, 329 F.3d 317, 324 (2d Cir. 2003)). This Court has found that "there is some room for a third-party medical provider to assert state law claims against an insurer when it has not been validly assigned its patient's benefits." *Aesthetic*, 367 F. Supp. 3d at 9.

In *McCulloch Orthopaedic Surgical Servs., PLLC v. Aetna Inc.*, 857 F.3d 141 (2d Cir. 2017), the Court found that a medical provider, who could not bring suit under Section 502 of ERISA because of a valid anti-assignment provision in the Patient's plan, could nevertheless bring a state law promissory estoppel clam. Applying the Supreme Court's two-pronged test in *Aetna Health Inc. v. Davila*, 542 U.S. 200, 209-10 (2004) to determine whether ERISA preempts a state law claim, the Court considered, for the first prong "(1) whether the plaintiff is the *type* of party that can bring a claim pursuant to § 502(a)(1)(B) and also (2) whether the actual claim that the plaintiff asserts can be construed as a colorable claim for benefits pursuant to § 502(a)(1)(B)." *Id.* at 146 (emphasis in original). For the second prong, the Second Circuit noted that "the claim must involve 'no other independent legal duty that is implicated by a defendant's actions.'" *Id.* (quoting *Davila*, 542 U.S. at 210).

At step one of prong one, the Second Circuit declined to hold that courts should ignore the presence of a valid anti-assignment agreement when determining if a party could bring suit

under ERISA, because "McCulloch—and other third-party providers in similar situations— would be left without a remedy to enforce promises of payment made by an insurer" and "[s]uch a rule would not further the principal purpose of ERISA to protect plan beneficiaries and participants" as "this risk of non-payment might lead medical providers to decide not to treat, or to otherwise screen, patients who are participants in certain plans." *McCulloch*, 857 F.3d at 148. The Court then proceeded to step two of prong one and found that "because McCulloch's promissory-estoppel claim does not implicate the terms of the plan—and instead is based on the Aetna representative's oral statements (regardless of whether those statements accurately represent the plan's terms)—McCulloch has not alleged a colorable claim for benefits pursuant to § 502(a)(1)(B)." *Id.* at 150.

Relying on *McCulloch*, Judge Meyer in *Aesthetic & Reconstructive Breast Ctr., LLC v. United HealthCare Grp., Inc.*, found that ERISA did not preempt third-party medical provider's state law claim for promissory estoppel because they concerned an "alleged promise of reasonable payment [that] is distinct from any obligations that [the provider] might have had under the plan to the patient." 367 F. Supp. 3d at 10. Because "evaluating the merits of the Center's claim for estoppel requires determining only '(1) the amount and terms of reimbursement that [the Center] could reasonably have expected given what could be fairly inferred from the statements, and (2) whether United's subsequent disposition of the reimbursement claims was consistent with that expectation[,]'" such evaluation "does not bear on any relationships between core ERISA entities, does not implicate the substantive terms of the patient's plan, and does not create any ongoing legal obligations under the plan." *Id.* at 10–11 (quoting *Access Mediquip L.L.C. v. UnitedHealthcare Ins. Co.*, 662 F.3d 376, 385 (5th Cir. 2011), *adhered to on reh'g en banc*, 698 F.3d 229 (5th Cir. 2012)) (alteration in original). In a

related opinion issued the same day, *Taylor Theunissen, M.D., LLC v. United HealthCare Grp., Inc.*, Judge Meyer found that ERISA preempted a similar promissory estoppel claim, and noted that the "key difference" between the case and *Aesthetic & Reconstructive Breast Ctr* was the submission of the pre-authorization letters which "makes clear that there is no basis for a claim of promissory estoppel, because they do not contain a clear and definite promise to pay benefits." 365 F. Supp. 3d at 247.

After Judge Meyer's decision, the Third Circuit, in *Plastic Surgery Ctr., P.A. v. Aetna Life Ins. Co.*, found that ERISA did not preempt a promissory estoppel claim from an out-of-network provider against an insurer because they "arose precisely because there was no coverage under the plans" for the third-party provider's services, and thus "absent a separate agreement between Aetna and the Center, there was no obligation for the Center to provide services to the plan participants, no obligation for Aetna to pay the Center for its services, and no agreement that compensation would be limited to benefits covered under the plan." 967 F.3d 218, 231 (3d Cir. 2020).

District courts in the Third Circuit have found that *Plastic Surgery Center*'s holding did not apply where the Patient's "health benefit plan covers services rendered by out-of-network providers. . . . Thus, in contrast to the insureds in *Plastic Surgery Center*, here, 'the scope of coverage, as well as payment, would be limited to the terms of the plans—leaving open the possibility that some services would not be compensated at all.'" *Advanced Orthopedics & Sports Med. Inst., P.C. v. Oxford Health Ins., Inc.*, No. CV 21-17221 (FLW), 2022 WL 1718052, at *6 (D.N.J. May 27, 2022) (citing *Plastic Surgery Ctr., P.A.*, 967 F.3d at 240).

Moreover, similar to Judge Meyer's decision in *Theunissen*, these courts have dismissed promissory estoppel claims where the parties provided the pre-authorization letter, and "the pre-

authorization letter unequivocally states that 'approval does not guarantee payment' and that further assessment will take place to determine whether the service codes are 'eligible for payment.'" *Id.; see also Peer Grp. for Plastic Surgery, PA v. United Healthcare Servs., Inc.*, No. 2:23-CV-02073 (BRM) (MAH), 2024 WL 1328134, at *7 (D.N.J. Mar. 28, 2024) ("The Gap Exception Letters do not include an agreed-upon rate of payment but instead provide that it is not guaranteed that the Plans will pay for the surgeries and that payment will be based on the terms of the Plans and Defendant's reimbursement policies."); *Princeton Neurological Surgery, P.C. v. Aetna, Inc.*, No. 322CV01414GCDEA, 2023 WL 2307425, at *7 (D.N.J. Feb. 28, 2023) ("[B]ecause J.R.'s Plan provided at least some benefits to out-of-network providers, the May 7, 2021 Aetna Letter also does not give rise to an agreement to pay independent of J.R.'s Plan. The letter and the authorization approvals contained therein were issued pursuant to J.R.'s Plan.").

Courts in this Circuit have likewise found that ERISA preempts promissory estoppel claims by third-party medical providers against insurers based on promises for payment in accordance with the terms of the patient's healthcare plan. *N. Jersey Plastic Surgery Ctr., LLC v. 1199SEUI Nat'l Benefit Fund*, No. 22-CV-6087 (PKC), 2023 WL 5956142, at *17 (S.D.N.Y. Sept. 13, 2023) ("The Amended Complaint itself concedes that the Preauthorization only 'promised to cover [the Patient's] procedure *in accord with the applicable healthcare plan* and per the applicable law.' Because these claims are directly dependent on an ERISA plan, they are preempted.") (emphasis and alteration in original); *Jenkins v. Aetna Health Inc.*, No. 23 CIV. 9470 (KPF), 2024 WL 1795488, at *8 (S.D.N.Y. Apr. 25, 2024) ("Accordingly, Plaintiff's unjust enrichment claim would require the Court to find that an ERISA plan exists in order to demonstrate that the Fund received a benefit and that retention of that benefit without payment would be unjust." (internal citation and quotation marks omitted)); *cf. Epic Reference Labs v.*

*Cigna*, No. 3:19-CV-1326 (SRU), 2021 WL 4502836, at *2, 11 (D. Conn. Sept. 30, 2021)
(ERISA did not preempt state law claims of "out-of-network providers, [who] do not have an
express contract with Cigna governing the provision of their services or the billing and payment
thereof" because "the Laboratories' common law claims for relief are based on Cigna's oral
promises and conduct—bases for independent promises—and hold that they do not
impermissibly refer to ERISA plans").

　　　　Here, applying the two-pronged test in *Davila*, while the presence of an anti-assignment
provision is sufficient to show that Prestige is not "the *type* of party that can bring a claim
pursuant to § 502(a)(1)(B)," it is not sufficient, however, to show that "the actual claim that
[Prestige] asserts can [not] be construed as a colorable claim for benefits pursuant to §
502(a)(1)(B)." *McCulloch* at 146 (emphasis in original). As in *Theunissen*, here, we have the
benefit of reviewing the pre-authorization letters at issue in this case. *See* Lund Decl. Ex. 2, Lund
Decl. Ex. 3. The pre-authorization letters indicate that Prestige's services were covered under
Patient's plan, and refer to and incorporate Patient's plan. Lund Decl. Ex. 2 at 12, Lund Decl. Ex.
3 at 12 (providing "[v]erification that the plan provides coverage for the type of services
approved (but, has not verified whether any applicable dollar limits under the plan have been
exhausted, or will soon be exhausted)"); Lund Decl. Ex. 2 at 12–13, Lund Decl. Ex. 3 at 12
("This coverage approval is NOT effective and benefits may not be paid if: . . . the member has
exceeded any applicable benefit maximums under the plan; OR. . .. the approved procedures or
services are not covered due to a preexisting condition limitation or exclusion under the plan [or]
. . . the members plan no longer includes coverage for the approved treatment/services."); Lund
Decl. Ex. 2 at 3, Lund Decl. Ex. 3 at 3 ("We use . . plan benefit documents to support these
coverage decisions.").

Unlike the state law claims in *McCulloch* and *Aesthetic & Reconstructive Breast Ctr,* which "[did] not implicate the substantive terms of the patient's plan," *Aesthetic* 367 F. Supp. 3d at 10, the pre-authorization letters refer to and are dependent on Patient's plan. *Compare McCulloch*, 857 F.3d at 150 ("McCulloch's promissory-estoppel claim does not implicate the terms of the plan—and instead is based on the Aetna representative's oral statements"); *with Advanced Orthopedics*, 2022 WL 1718052, at *6 (D.N.J. May 27, 2022) ("in contrast to the insureds in *Plastic Surgery Center*, here, 'the scope of coverage, as well as payment, would be limited to the terms of the plans—leaving open the possibility that some services would not be compensated at all.'"); *N. Jersey Plastic Surgery Ctr.,* 2023 WL 5956142, at *17 ("Because these claims are directly dependent on an ERISA plan, they are preempted.").

Accordingly, the Court finds that ERISA preempts Prestige's unjust enrichment claim.

In addition, even if Prestige's unjust enrichment claim were not preempted, the pre-authorization letters do not guarantee that ALIC would pay the amount requested, but rather specify that payment would be subject to the limitations of Patient's plan. *See* Lund Decl. Ex. 2 at 12, Lund Decl. Ex. 3 at 12 ("This coverage approval is NOT effective and benefits may not be paid if . . . [certain conditions are not met].") ; Lund Decl. Ex. 2 at 13, Lund Decl. Ex. 3 at 4 ("Reimbursement will be based on standard coding and bundling logic and any mutually agreed upon contracted or negotiated rates, subject to any and all copays or coinsurance requirements."); *id.* ("We may process your claims as 'out-of-network' or 'non-preferred.' And, you may have to pay: Higher copayments . . . Any provider charges above what we cover (these costs may be high)").

Given these express disclaimers, "there is no basis for a claim of promissory estoppel, because [the letters] do not contain a clear and definite promise to pay benefits." *Theunissen*, 365

F. Supp. 3d at 247; *see also Crouse v. Cyclops Indus.*, 745 A.2d 606, 610 (2000) ("In order to maintain an action in promissory estoppel, the aggrieved party must show that 1) the promisor made a promise that he should have reasonably expected to induce action or forbearance on the part of the promisee; 2) the promisee actually took action or refrained from taking action in reliance on the promise; and 3) injustice can be avoided only by enforcing the promise.")

Accordingly, Plaintiff's state law claim for promissory estoppel must be dismissed. [10]

### D.  Leave to Amend

Under Federal Rule of Civil Procedure 15(a),

> [a] party may amend its pleading once as a matter of course no later than: (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.

Fed. R. Civ. P. 15(a)(1). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). "The court should freely give leave when justice so requires." *Id.* The district court has broad discretion to decide a motion to amend. *See Local 802, Assoc. Musicians of Greater N.Y. v. Parker Meridien Hotel*, 145 F.3d 85, 89 (2d Cir. 1998)("[T]he trial judge's discretion [to grant leave to amend] is broad").

---

[10] While the Court need not address Plaintiff's claims for breach of contract or account stated, the Court notes that had the Plaintiff not withdrawn these claims, they would be dismissed for the reasons explained in *Aesthetic & Reconstructive Breast Ctr., LLC v. United HealthCare Grp., Inc.* 367 F. Supp. 3d. at 10 ("UHG's supposed benefit, in the Center's view, is the ability to fulfill its obligations under the patient's plan through the Center's services, rather than to do so from elsewhere. Determining the merits of the Center's claim therefore would require a look to and reliance on the actual coverage terms of UHG's plan. . . . As with the contract claim, I will also dismiss the Center's claims for account stated. . . . These claims arise from a contractual relationship between the parties to extend credit, rather than equitable promises or misrepresentations. . . . For the reasons stated above, any claim arising from contractual relationship asserted between the Center and defendants is preempted by ERISA, including this one.") (internal citations omitted) (applying Connecticut law).

Reasons for denying leave to amend include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment[.]" *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d 243, 258 (2d Cir. 2002) (noting that leave to amend may be denied when amendment is "unlikely to be productive," such as when an amendment is "futile" and "could not withstand a motion to dismiss [under] Fed. R. Civ. P. 12(b)(6)."). "[A] motion for leave to amend a complaint may be denied when amendment would be futile." *Tocker v. Phillip Morris Cos., Inc.*, 470 F.3d 481, 491 (2d Cir. 2006) (citing *Ellis v. Chao*, 336 F.3d 114, 127 (2d Cir. 2003)); *see also Kim v. Kimm*, 884 F.3d 98, 105–06 ("Therefore, because the proposed amendments would have no impact on the basis for the district court's dismissal and would consequently be futile, the district court did not abuse its discretion in denying [the plaintiff] leave to amend." (citing *Ellis*, 336 F.3d at 127)).

As discussed above, Plaintiff's state law claims are preempted by ERISA, and Plaintiff lacks standing to bring its ERISA claims.

Prestige argues that it "should be granted leave to amend the Complaint and/or caption in order to allow the Patient to directly assert her claims for the clear and indisputable violations of Patient's rights under ERISA." Opp'n. at 20.

The Court agrees, at least in part.

Because, in this Circuit, medical providers may not utilize a power of attorney to circumvent an anti-assignment clause, Prestige will lack standing to assert Patient's claims under this theory. *Karkare*, 2022 WL 17787619, at *3 ("In this Circuit, a power of attorney is insufficient for a provider to bring suit on behalf of a patient under ERISA"). Thus, to the extent

Prestige seeks leave to amend and bring suit under this theory, *see* Opp'n at 18 ("the Caption

an[d]/or Complaint can be amended to specifically identify the fact that the Patient's rights are

being directly asserted in the Complaint."), the Court will deny leave to amend because any such

amendment would be futile. *Ellis*, 336 F.3d at 127 (2d Cir. 2003) ("[I]t is well established that

leave to amend a complaint need not be granted when amendment would be futile.").

 To the extent, however, Plaintiff seeks leave to amend the Complaint so that Patient

directly asserts her ERISA claims against Defendants, the Court grants leave to amend.

 Under Federal Rule of Civil Procedure 17, "an action must be prosecuted in the name of

the real party in interest." Fed. R. Civ. P. 17(a)(1). A court, however, "may not dismiss an action

for failure to prosecute in the name of the real party in interest until, after an objection, a

reasonable time has been allowed for the real party in interest to ratify, join, or be substituted

into the action." Fed. R. Civ. P. 17(a)(3). "After [such] ratification, joinder, or substitution, the

action proceeds as if it had been originally commenced by the real party in interest." *Id.*

"Although the district court retains some discretion to dismiss an action where there was no

semblance of any reasonable basis for the naming of an incorrect party, . . . , there plainly should

be no dismissal where 'substitution of the real party in interest is necessary to avoid injustice[.]'"

*Advanced Magnetics*, 106 F.3d at 20 (quoting 6A Charles A. Wright, Arthur R. Miller & Mary

Kay Kane, Federal Practice and Procedure § 1555, at 415 (2d ed.1990)).

 The Second Circuit has declined to determine "whether a plaintiff may use Rule 17(a)(3)

to remedy a standing deficiency when it lacks standing as to all of its claims." *Cortlandt St.

Recovery Corp. v. Hellas Telecommunications, S.a.r.l*, 790 F.3d 411, 423 (2d Cir. 2015); *but see

Clarex Ltd. v. Natixis Sec. Am. LLC*, No. 12-CV-0722 (PAE), 2012 WL 4849146, at *8

(S.D.N.Y. Oct. 12, 2012) ("where courts in this Circuit have used of Rule 17(a)(3) to remedy

defects in standing, they have generally done so where the plaintiff clearly had standing on another claim that it brought."). Though Prestige lacks standing to bring suit, the Court nevertheless finds that granting leave to amend to allow Patient to assert the ERISA claims alleged in the Complaint directly, based substantially on the same allegations set forth in the Complaint, would not prejudice Defendants. *Advanced Magnetics*, 106 F.3d at 21 ("Nor do we see any unfairness to defendants in allowing substitution of the selling shareholders as plaintiffs on their respective claims. The original complaint plainly gave defendants the particulars of the selling shareholders' claims.").

As participant of the ERISA plan, Patient has standing to sue under Section 502. 29 U.S.C. § 1132(a)(1)(B) ("a civil action may be brought. . . by a participant or beneficiary . . . to enforce his rights under the terms of the plan"). Moreover, the Complaint alleges that Patient was obligated to pay the unpaid balance of her surgeries, Compl. ¶ 25, 31, and thus she may be the real party in interest.

Accordingly, the Court will grant leave to amend to substitute Patient as the Plaintiff, though Prestige may not bring this claim as Designated Authorized Representative of Plaintiff. [11]

## IV.   CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is **GRANTED**.

---

[11] Prestige argues that allowing it to proceed through power of attorney is "no different than if the Patient had hired this firm direclty [sic] to file her ERISA claims on her own behalf, except that she is spared the costs and expenses associated with litigation." Opp'n at 18. The Court is not convinced that the distinction carries so little import. *See Sundown*, 2024 WL 1051165, at *14 (E.D.N.Y. Jan. 16, 2024) ("[T]he Court disagrees with Defendant's argument that the case caption listing Sundown as the plaintiff is of no legal moment and to that to allow such an action would elevate form over substance. The Court is mindful that, for a number of reasons, the identity of the named plaintiff to an action may impact the relationships involved in a substantive, as opposed to merely formal, way, including the person to whom counsel owes ethical obligations as a client, the person with the ultimate authority to decide the course of a litigation when the principal and agent disagree, and the person against whom a dismissal with prejudice would have preclusive effect.")(citation and internal quotation marks omitted).

Prestige's claims are **DISMISSED with prejudice**.

To the extent that Patient seeks to bring her ERISA claims directly as Plaintiff in substitution for Prestige, she may move for leave to amend the Complaint by **October 25, 2024**.

**SO ORDERED** at New Haven, Connecticut, this 30th day of September, 2024.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE