UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| PRESTIGE INSTITUTE FOR PLASTIC SURGERY, JENNIFER REESE,<br>    *Plaintiffs*,<br><br>v.<br><br>AETNA LIFE INSURANCE COMPANY, GEORGE ALLEN WASTEWATER MANAGEMENT,<br>    *Defendants*. | No. 3:23-cv-0940 (VAB) |

**RULING AND ORDER ON MOTION TO AMEND**

Jennifer Reese ("Plaintiff") has filed a motion for leave to amend, with a proposed Amended Complaint alleging in Count One, failure to make payments according to member's plan under Section 502(a)(1) of the Employee Retirement Income Security Act ("ERISA"); in Count Two, breach of fiduciary duty under ERISA; and in Count Three, failure to establish a summary plan description that complies with ERSIA, against Aetna Life Insurance Company ("Aetna") and George Allen Wastewater Management (collectively, "Defendants").

Defendants oppose the motion for leave to amend.

For the following reasons, the motion for leave to amend is **GRANTED.**

The parties are instructed to engage in discovery, only as specifically provided for in this Ruling and Order until **September 5, 2025**, and to file any dispositive motions, again only as specifically provided for in this Ruling and Order, by **October 3, 2025**.

I.      FACTUAL AND PROCEDURAL BACKGROUND

    A. Factual Allegations

Ms. Reese has a history of breast cancer. Proposed Am. Compl. ¶ 14, ECF No. 36 (Oct. 24, 2024) ("Am. Compl.").

On July 16, 2019, Dr. Joseph Tamburrino, a plastic surgeon associated with Prestige Institute for Plastic Surgery ("Prestige"), completed breast reconstruction surgery on Mr. Reese. *Id.* ¶ 15-17.

Before the surgery, Prestige allegedly sought and received written approval from Aetna pre-authorizing insurance coverage of the surgery, based on the specific billing codes for the surgery. *Id.* ¶¶ 17–20.

After the surgery, Prestige submitted a claim of $100,000 to Aetna for the pre-authorized surgery. *Id.* ¶¶ 21–22. The cost was allegedly a "usual and customary charge[]" for the complex procedure performed by Dr. Tamburrino. *Id.*

Aetna allegedly paid $1,071.27 on the claim, leaving a balance of $98,928.73 to be paid by Ms. Reese. *Id.* ¶ 23.

Under the insurance plan, benefits for out-of-network providers are allegedly paid at "105% of Medicare allowable rate." *Id.* ¶ 24. The procedure completed by Dr. Tamburrino—billing code S2068—allegedly does not have a Medicare allowable rate, and therefore Plaintiff alleges it "must be paid at its billed charge of $100,000." *Id.* ¶ 26.

Ms. Reese's reconstruction additionally required a second-stage surgery. *Id.* ¶ 27.

For the second stage of the reconstruction, Prestige allegedly again sought pre-authorization of coverage from Aetna. *Id.* ¶ 28.

On January 15, 2020, Prestige allegedly received specific pre-authorization based on the billing codes for the second-stage surgery. *Id.* ¶ 29.

On January 29, 2020, the surgery for the second stage of reconstruction was completed on Ms. Reese. *Id.* ¶ 30.

On the same day, the claim was submitted to Aetna for the second-stage surgery, totaling $22,179.82. *Id.* ¶ 31. Aetna allegedly denied payment of this bill. *Id.* ¶ 32.

The total billed charges for the allegedly pre-authorized surgeries was $122,179.82. *Id.* ¶ 34. Of these charges, Aetna allegedly paid $1,071.27, leaving a balance of $121,108.55. *Id.* ¶ 35.

Aetna allegedly knew that Prestige was an out-of-network provider, but "never disclosed that it did not intend to pay the usual and customary value" for the surgeries completed. *Id.* ¶ 36.

### B. Procedural History

On July 15, 2023, Prestige filed a Complaint against Aetna and George Allen Wastewater Management. Compl., ECF No. 1 (July 15, 2023) ("Compl.").

On October 23, 2023, Defendants filed a motion to dismiss Prestige's Complaint. Mot. to Dismiss, ECF No. 27 (Oct. 23, 2023).

On December 12, 2023, Prestige filed a response to the motion to dismiss. Response, ECF No. 30 (Dec. 12, 2023).

On January 19, 2024, Defendants filed a reply to the response to the motion to dismiss. Reply to Response, ECF No. 33 (Jan. 19, 2024).

On September 30, 2024, the Court granted the motion to dismiss and dismissed all claims filed by Prestige with prejudice. Order on Mot. to Dismiss, ECF No. 34 (Sept. 30, 2024) ("Order on Mot. to Dismiss"). The Court allowed the patient—now identified as Ms. Reese—to move for

leave to amend to the extent she could "bring her ERISA claims directly" in substitution for Prestige. *Id.*

On October 24, 2024, Ms. Reese filed a motion for leave to amend. Mot. to Amend/Correct, ECF No. 36 (Oct. 24, 2024).

On December 6, 2024, Defendants filed a memorandum in opposition to the motion for leave to amend. Memo. in Opp., ECF No. 41 (Dec. 6, 2024).

On January 3, 2025, Ms. Reese filed a reply to the memorandum in opposition. Reply, ECF No. 44 (Jan. 3, 2025) ("Reply").

On January 9, 2025, Defendants moved to file a sur-reply. Mot. for Leave to File Sur-Reply, ECF No. 45 (Jan. 9, 2025).

On January 10, 2025, Ms. Reese objected to Defendants' motion to file a sur-reply. Memo. in Opp., ECF No. 46 (Jan. 10, 2025). On the same day, the Court granted Defendants' motion to file a sur-reply. Order, ECF No. 47 (Jan. 10, 2025).

On January 17, 2025, Defendants filed a sur-reply. Reply to Response, ECF No. 48 (Jan. 17, 2025) ("Sur-Reply").

## II.  STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 15(a), "[a] party may amend its pleading once as a matter of course within: (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Fed. R. Civ. P. 15(a)(1). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2).

4

The district court has broad discretion to decide a motion to amend. *See Local 802, Assoc. Musicians of Greater N.Y. v. Parker Meridien Hotel*, 145 F.3d 85, 89 (2d Cir. 1998). If a court chooses to deny leave to amend, however, it must give some "justifying reason" for doing so. *Foman v. Davis*, 371 U.S. 178, 182 (1962). Reasons for denying leave to amend include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment[.]" *Id.*; *see also Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d 243, 258 (2d Cir. 2002) (noting leave to amend may be denied when amendment is "unlikely to be productive," such as when an amendment is "futile" and "could not withstand a motion to dismiss [under] Fed. R. Civ. P. 12(b)(6)"); *Park B. Smith, Inc. v. CHF Indus. Inc.*, 811 F. Supp. 2d 766, 779 (S.D.N.Y. 2011) ("While mere delay, absent a showing of bad faith or undue prejudice, is not enough for a district court to deny leave to amend, the longer the period of an unexplained delay, the less will be required of the nonmoving party in terms of a showing of prejudice." (internal quotation marks omitted)).

"An amendment is considered 'futile' if the amended pleading fails to state a claim or would be subject to a successful motion to dismiss on some other basis." *Faryniarz v. Ramirez*, 62 F. Supp. 3d 240, 249 (D. Conn. 2014). "Amendment would likely be futile if, for example, the claims the plaintiff sought to add would be barred by the applicable statute of limitations." *Grace v. Rosenstock*, 228 F.3d 40, 53 (2d Cir. 2000).

### III. DISCUSSION

In her proposed Amended Complaint, Ms. Reese alleges three Counts: Count One, failure to may payments according to member's plan under ERISA; Count Two, breach of fiduciary

duty under ERISA; and Count Three, failure to establish a sufficient summary plan description under ERSIA.

Defendants argue that Ms. Reese's proposed amendments are futile because the claims are time-barred and that the Amended Complaint does not "relate back" to the original Complaint under Federal Rule of Civ. Pro. Rule 15(c)(1).

The Court addresses each argument in turn, beginning with the "relation back" to the original complaint.

### A. The Relation Back Doctrine

"Rule 15(c) of the Federal Rule of Civil Procedure governs when an amended pleading 'relates back' to the date of a timely filed original pleading and is thus itself timely even though it was filed outside an applicable statute of limitations." *Krupski v. Costa Crociere S.p.A.*, 560 U.S. 538, 541 (2010). The "central inquiry is whether adequate notice of the maters raised in the amended pleading has been given to the opposing party within the statute of limitations by the general fact situation alleged in the original pleading." *Slayton v. American Exp. Co.*, 460 f.3d 215, 228 (2d Cir. 2006) (quoting *Stevelman v. Alias Research Inc.*, 174 F.3d 79, 86 (2d Cir. 1999)).

Defendants argue that the claims in the Amended Complaint are "demonstrably different" from those in the original Complaint, and that due to the substitution of Ms. Reese as Plaintiff, the Amended Complaint does not relate back to the filing date of Prestige's Complaint. Memo. in Opp. at 8–9.

In reply, Ms. Reese argues that the doctrine of relation back is "of little import" because "the proposed amended claims are timely with or without relating back." Reply at 6. But that, in any case, the Amended Complaint does "relate back" to the original Complaint. *Id.*

6

At this time, however, the Court does not decide whether the Amended Complaint relates back to the original Complaint. As explained below, the issue of whether the limitation period in the plan was disclosed to Ms. Reese, and therefore the applicable limitation period, must be determined first.

### B. The Statute of Limitations Period

For claims of wrongful denial of benefits under 29 U.S.C. § 1132, ERISA does not prescribe a statute of limitations period. Courts thus apply the "limitations period [] that [is] specified in the most nearly analogous state limitations statute." *Miles v. New York State Teamsters Conference Pension & Ret. Fund Employee Pension Benefit Plan*, 698 F.2d 593, 598 (2d Cir. 1983). In Connecticut, courts apply the six-year statute of limitations for contract actions. *See Cole v. Travelers Ins. Co.*, 208 F. Supp. 2d 248, 252 (D. Conn. 2002) ("The state limitations statute most analogous to § 502(a)(1)(B) claims for wrongful denial of benefits is that for contract actions. . . . Connecticut's six-year statue of limitations for contract actions applies because [Plaintiff] chose to file this action in Connecticut.").

If an insurance policy establishes a limitation period, however, courts will apply that limitation instead of the statutory period. *See Heimeshoff v. Hartford Life & Acc. Ins. Co.*, 571 U.S. 99, 116 ("We hold that the Plan's limitations provision is enforceable."); *Yuhas v. Provident Life and Cas. Ins. Co.*, 162 F. Supp. 2d 227, 231 (S.D.N.Y. 2001) ("While claims brought pursuant to ERISA have no prescribed statute of limitations period, the Second Circuit generally applies the period used in analogous actions[.] . . . In the instant case, both parties recognize that the LTD policy specifies a three-year statute of limitations for filing LTD benefit claims. . . . Thus, the three-year statute of limitations, rather than the six-year limitations period, controls plaintiff's cause of action."). To be enforceable, however, the plan limitation period must have

been disclosed to the insured. *See, e.g., Manginaro v. Welfare Fund of Local 771, I.A.T.S.E.*, 21 F. Supp. 2d 284, 294 (S.D.N.Y. 1998) ("More specifically, although the six-year limitations period of N.Y. C.P.L.R. § 213 may be shortened by the Plan, such a limitation will not be enforced unless it was properly disclosed to plaintiffs via the SPD [summary plan document].").

For fiduciary duty claims, ERISA does provide a statute of limitations. For these claims:

> No action may be commenced under this subchapter with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part, or with respect to a violation of this part, after the earlier of—
> (1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission, the latest date on which the fiduciary could have cured the breach or violation, or
> (2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation;
> except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation.

29 U.S.C. § 1113.

Defendants argues that each of Ms. Reese claims should be considered a wrongful denial of benefits claim, and that the insurance plan's three-year limitation period for legal claims applies. Memo. in Opp. at 6. Because, Defendants argue, Ms. Reese's claims accrued by December 12, 2019 and June 11, 2020, the limitation period for each claim had run by the filing of the original Complaint on July 15, 2023 and the Amended Complaint on October 2, 2024. *Id.* at 7.

In response, Ms. Reese argues that Count Two should be considered timely based on the six-year statute of limitations for fiduciary duty claims under 29 U.S.C. § 1113(1). Reply at 5. Ms. Reese also argues that Defendants are attempting to "hide the ball" because they did not provide all plan documents when they were requested during Aetna's internal appeals process, but are now arguing "that the Patient/member's claims are time-barred by the Plan which they

8

refused to provide in the first instance." *Id.* at 6. Ms. Reese also argues that based on Aetna's alleged failure to provide the plan documents, Ms. Reese is entitled to a penalty of $110.00 a day, starting thirty days from date of the document request. *Id.* at 5–6.

In their Sur-Reply, Defendants argue that Ms. Reese failed to challenge the validity or application of the plan's three-year limitation period; that all claims alleged by Ms. Reese should be considered claims of wrongful denial of benefits, including the fiduciary duty claim; and that even if considered under the statute of limitations for fiduciary duty claims, Ms. Reese's claim is untimely. Sur-Reply at 2–5.

The Court agrees, in part.

First, as to the fiduciary duty claim, Ms. Reese is "essentially challenging Defendants' benefits determinations." *Popovchak v. UnitedHealth Group Incorporated*, 692 F. Supp. 392, 414 (S.D.N.Y. 2013). Ms. Reese explicitly alleges that Defendants breached their fiduciary duty by "denying payment for services," "failing to provide coverage," and "failing to disclose" what Defendants would pay to out-of-network providers. Am. Compl. ¶ 57. Each of these allegations is, in essence, a claim that Defendants wrongfully denied her benefits. Furthermore, as a result of these alleged breaches, Ms. Reese requests $121,108.55, the amount Aetna allegedly failed to cover due to the denial of benefits. *Id*. 35, 57–58.

Ms. Reese's additional allegation that Defendants breached their fiduciary duty by "violating [their] own internal documents," *id.* ¶ 57, in the administration of Ms. Reese's claims does not change the analysis. *See, e.g.*, *Popovchak*, 692 F. Supp. 3d at 413 ("Plaintiffs' claim that Defendants breached their fiduciary duties by failing to act in accordance with the Plans' written terms must be dismissed because it duplicates their claims for benefits under Section 502(a)(1)(B). . . . [T]his claim is focused on Defendants' alleged failure adequately to reimburse

9

Plaintiffs for out-of-network services under the Plans. Attempts to 'repackage claims for wrongful denial of benefits' under Section 502(a)(1)(B) as claims for breaches of fiduciary duty are routinely dismissed at the pleading stage."); *see also Del Greco v. CVS Corp.*, 337 F. Supp. 2d 475, 488 (S.D.N.Y. 2004) ("Whether Plaintiff seeks to clothe this issue in the garb of 'recovery of benefits' or 'breach of fiduciary duty' does not change the fact that the relief sought—reimbursement for an overcharge under the Plan—is the same."). Count Two is thus subject to the same limitations period as Counts One and Three.[1]

Under the plan, an insured cannot take legal action "after 3 years from the deadline of filing claims." Exhibit 1, at 87 ECF No. 41-2 (Dec. 6, 2024) ("Plan") ("No legal action can be brought to recover payment under any benefit after 3 years from the deadline of filing claims.").[2] The deadline for filing claims for out-of-network benefits is "90 days after you have incurred expenses." *Id.* at 67.[3]

If this three-year limitation applies, then the deadline for Ms. Reese filing her claim for the first surgery was December 12, 2019, ninety days after she received the explanation of benefits detailing her costs owed on September 13, 2019, Memo. in Opp. at 6; *see also* Explanation of Benefits, Exhibit 2, ECF No. 41-3 (Dec. 6, 2024), and any such claim would be untimely as of December 12, 2022. For the second surgery, Ms. Reese's claim would accrue on June 11, 2020, ninety days after she received the explanation of benefits on March 13, 2020,

---

[1] Because the Court finds that Ms. Reese's fiduciary duty claim is actually a claim for wrongful denial of benefits, the Court does not assess whether this claim would be untimely if considered under the statute of limitations for breach of fiduciary duty claims.

[2] The Court considers the explanations of benefits and plan document attached as Defendant's exhibits as "integral" to the proposed Amended Complaint. *See Lively v. WAFRA Investment Advisory Group. Inc.*, 6 F.4th 293, 305 (2d Cir. 2021) (stating that district courts may consider documents extrinsic to the complaint if they are "'integral' to the complaint" or documents "that the complaint 'incorporate[s] by reference'"); *see also Korman v. Consolidated Edison Co. of New York, Inc.*, 915 F. Supp. 2d 359, 362–63 (E.D.N.Y. 2013) (considering explanation of benefits forms and summary plan documents as incorporated by reference into complaint alleging ERISA claims).

[3] When citing to the plan, the Court uses the page numbers created by ECF.

Memo. in Opp. at 7; *see also* Explanation of Benefits, Exhibit 3, ECF No. 41-4 (Dec. 6, 2024), and any such claim would be untimely as of June 11, 2023. Both of these dates are before the filing of the Complaint on July 15, 2023 and the proposed Amended Complaint on October 24, 2024.

Ms. Reese does not dispute the accrual date of her claims under the plan, nor argue for the application of an alternative statute of limitations for these claims. *See* Reply. Instead, Ms. Reese argues that Defendants did not provide all plan documents when she initially challenged the denial of her claims in 2020, and that she only received this documentation when Defendants attached it to the motion to dismiss in this case. *Id.* at 5; *see also* Mot. to Dismiss, ECF No. 27 (Oct. 23, 2023).

To the extent Ms. Reese intends to assert a claim of damages that she is "owed a penalty in the sum of approximately $127,050.00" due to Defendants' alleged failure to provide the plan documents, Reply at 5–6, this is not a claim raised in the motion to amend or proposed Amended Complaint, and therefore, the Court will not consider it. *See Corpes v. Walsh Construction Company*, 130 F. Supp. 3d 638, 644 (D. Conn. 2015) ("Because raising new arguments for the first time in a reply brief is improper, the Court will not consider these issues . . . .").[4]

And, while she vaguely asserts that Defendants are "hiding the ball," Reply at 5, Ms. Reese does not allege that the summary plan document she received failed to disclose the limitation period. In the proposed Amended Complaint, Ms. Reese argues only that the summary

---

[4] Even if properly alleged, such a claim would be untimely as well. Section 502(c)(1) claims seeking to enforce the $100/day penalty are subject to a one-year statute of limitations period based on Connecticut's civil forfeiture statute. *See Brown v. Rawlings Financial Services, LLC*, 868 F.3d 126, 132 (2d Cir. 2017) ("In sum, Connecticut civil forfeiture claims are more closely analogous to Section 502(c)(1) claims than are Brown's proposed alternatives. Consequently, the district court appropriately applied the one-year statute of limitations for civil forfeitures."). Since Ms. Reese alleges that she requested the plan document the latest on October 12, 2020, and a Section 502(c)(1) claim begins to accrue 30 days after a request, a claim for damages under this Section would be far beyond the one-year period.

11

plan document failed to provide sufficient detail on out-of-network benefits. *See* Am. Compl. ¶ 64 (alleging summary plan document fails to disclose and explain information on out-of-network benefits); *see also* Compl. ¶ 90 (same).

But the issue of notice regarding the details of the summary plan is critical to the resolution of the proper limitation period, and whether any of Ms. Reese's claims are precluded. *See Manginaro*, 21 F.Supp.2d at 294 (recognizing that while a statutory limitations period "may be shortened by the Plan, such a limitation will not be enforced unless it was properly disclosed to plaintiffs via the [summary plan description]") (collecting cases). This inquiry is better conducted, however, following—at least some—discovery. *See id.* (reviewing, at the summary judgment stage of the case, whether "suitable disclosure to the parties affected by" a summary plan description shortening the statute of limitations period had been made); *see also Staehr v. Hartford Financial Services Group, Inc.*, 547 F.3d 406, 425 (2d Cir. 2008) ("The lapse of a limitations period is an affirmative defense that a defendant must plead and prove. However, a defendant may raise an affirmative defense in a pre-answer Rule 12(b)(6) motion if the defense appears on the face of the complaint." (citations omitted)); *Fargas v. Cincinnati Mach., LLC*, 986 F. Supp. 2d 420, 427 (S.D.N.Y. 2013) ("[B]ecause the defendants bear the burden of establishing the expiration of the statute of limitations as an affirmative defense, a pre-answer motion [] on this ground may be granted only if it is clear on the face of the complaint that the statute of limitations has run.").

As a result, leave to amend the Complaint, limited discovery on this critical issue, *i.e.*, the deposition on this issue alone of Ms. Reese and any key person or persons responsible for, or with sufficient knowledge about, the distribution of the relevant plan documents to her, and, if appropriate, leave to file an early summary judgment motion, can and should be permitted. *See*

*Dietz v. Bouldin*, 579 U.S. 40, 47 (2016) ("[D]istrict courts have the inherent authority to manage their dockets and courtrooms with a view toward the efficient and expedient resolution of cases."); *see also Fargas*, 986 F. Supp. at 427 (denying motion to dismiss on basis that statute of limitations had run "without prejudice to making a motion for summary judgment" after discovery); *cf. Staehr*, 547 F.3d at 434 ("It suffices to say that the record adduced here was not enough to convince us that a reasonable investor would have notice, as a matter of law, of the probability of fraud.").

Accordingly, the motion for leave to amend will be granted.

## IV.    CONCLUSION

For the foregoing reasons, the motion for leave to amend is **GRANTED.**

The parties are instructed to engage in discovery, only as specifically provided for in this Ruling and Order until **September 5, 2025**, and to file any dispositive motions, again only as specifically provided for in this Ruling and Order, by **October 3, 2025**.

**SO ORDERED** at New Haven, Connecticut, this 20th of June, 2025.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE